# Exhibit A

**Cases awarding attorneys' fees under 35 U.S.C. § 285**

**for handling proceedings before the USPTO**

840 F.2d 1565, 56 USLW 2540, 6 U.S.P.Q.2d 1010
**(Cite as: 840 F.2d 1565)**

▷

United States Court of Appeals,
Federal Circuit.
PPG INDUSTRIES, INC., Plaintiff–Appellee,
v.
CELANESE POLYMER SPECIALTIES CO.,
INC., Defendant–Appellant.

No. 87–1437.
March 3, 1988.

Prevailing defendant in patent infringement action applied for award of attorney fees and disbursements incurred as result of action. The United States District Court for the Western District of Kentucky, 658 F.Supp. 555, Charles M. Allen, Senior District Judge, awarded attorney fees for less than amount sought. Prevailing defendant appealed. The Court of Appeals, Bissell, Circuit Judge, held that prevailing defendant was entitled to award of attorney fees for participation in reissue proceedings instituted by assignee in Patent and Trademark Office, participation in assignee's appeal of decisions of Board of Patent Appeals and Interferences, and services of in-house litigation counsel.

Reversed and remanded.

Bissell, Circuit Judge, filed opinion stating additional views.

West Headnotes

**[1] Federal Courts 170B ⟨key⟩3335**

170B Federal Courts
    170BXVII Courts of Appeals
        170BXVII(C) Decisions Reviewable
            170BXVII(C)2 Particular Decisions, Matters, or Questions as Reviewable
                170Bk3331 Remedial Matters
                    170Bk3335 k. Costs and attorney fees. Most Cited Cases

(Formerly 170Bk597)

District court order awarding attorney fees and claiming to be final and appealable was final decision subject to appellate review. 28 U.S.C.A. § 1295(a)(1); 35 U.S.C.A. § 285.

**[2] Patents 291 ⟨key⟩2000**

291 Patents
    291VII Patent Infringement
        291VII(C) Actions
            291VII(C)8 Costs and Fees
                291k1996 Attorney Fees
                    291k2000 k. Awards to competitors. Most Cited Cases

(Formerly 291k325.11(4))

Prevailing defendant in patent infringement suit did not have option of avoiding participation in assignee's reissue application proceedings before Patent and Trademark Office and was entitled to reasonable attorney fees incurred for participation in reissue proceedings; proceedings substituted for district court litigation on issues considered by Office and Board ofPatent Appeals and Interferences. 35 U.S.C.A. § 285.

**[3] Federal Civil Procedure 170A ⟨key⟩2743.1**

170A Federal Civil Procedure
    170AXIX Fees and Costs
        170Ak2743 Appellate Costs
            170Ak2743.1 k. In general. Most Cited Cases

(Formerly 170Ak2743)

Local rule of Court of Appeals for the Federal Circuit on attorney fees does not prohibit district court from awarding fees for prior appeals, where appeals are integral part of ongoing litigation. U.S.Ct. of App. Fed.Cir.Rules 20, 20(a)(1), 28 U.S.C.A.

**[4] Patents 291 ⟨key⟩1898**

291 Patents
    291VII Patent Infringement

840 F.2d 1565, 56 USLW 2540, 6 U.S.P.Q.2d 1010

**(Cite as: 840 F.2d 1565)**

291VII(C) Actions
 291VII(C)5 Relief
  291k1894 Enforcement of Injunction
   291k1898 k. Proceedings in general. Most Cited Cases
(Formerly 291k325.15)

Patent assignee's unsuccessful appeal to challenge rejection of reissue applications by Board of Patent Appeals and Interferences was integral part of reissue proceedings that virtually replaced district court litigation in infringement suit, and, thus, prevailing defendant was entitled to award of reasonable attorney fees for services performed as intervenor in assignee's appeal of Board's decisions. 35 U.S.C.A. § 285; U.S.Ct. of App. Fed.Cir.Rules 20, 20(a)(1), 28 U.S.C.A.

**[5] Patents 291 ⚷2006**

291 Patents
 291VII Patent Infringement
  291VII(C) Actions
   291VII(C)8 Costs and Fees
    291k2005 Proceedings to Impose; Taxation
     291k2006 k. In general. Most Cited Cases
(Formerly 291k325.11(5), 326k500)

Record containing approximately 500 pages of documentation, which consisted of affidavits supported by extensive, corroborative business records and which was prepared only 22 months after time period at issue, contained sufficient reconstructive records to base award of attorney fees to prevailing defendant for services rendered by in-house counsel during time period that counsel was lead litigation counsel. 35 U.S.C.A. § 285.

**[6] Federal Civil Procedure 170A ⚷2737.14**

170A Federal Civil Procedure
 170AXIX Fees and Costs
  170Ak2737 Attorney Fees
   170Ak2737.14 k. Miscellaneous matters. Most Cited Cases
(Formerly 170Ak2737)

Attorney fees are allowable if they are based on records that are substantially reconstructed and reasonably accurate.

**Patents 291 ⚷328(2)**

291 Patents
 US Patent 3,984,299, US Patent 4,031,050. Cited.

**\*1566** Edward M. O'Toole, Marshall, O'Toole, Gerstein, Murray & Bicknell, Chicago, Ill., argued, for plaintiff-appellee.

Herbert Schwartz, Fish & Neave, New York City, argued, for defendant-appellant. With him on the brief were Patricia A. Martone and Ron E. Shulman. Also on the brief were John T. Ballantine, Ogden & Robertson, Louisville, Ky. and Andrew F. Sayko, Jr., Celanese Specialty Operations, Chatham, N.J., of counsel.

Before RICH, Circuit Judge, COWEN, Senior Circuit Judge, and BISSELL, Circuit Judge.

BISSELL, Circuit Judge.

Celanese Polymer Specialties Co., Inc. (Celanese) appeals that portion of the district court's order, *PPG Industries v. Celanese Polymer Specialties Co.,* 658 F.Supp. 555, 3 USPQ2d 1683 (W.D.Ky.1987), which awarded Celanese attorney fees for less than the amount it sought. We reverse and remand.

BACKGROUND

PPG Industries, Inc. (PPG), as assignee, sued Celanese for infringement of its Jerabek patents, No. 4,031,050 ('050) and No. 3,984,299 ('299), both relating to the electrodeposition of coating compositions. *See generally PPG Indus. v. Celanese Polymer Specialties Co.,* 1 USPQ2d 1584 (W.D.Ky.1986) [Available on WESTLAW, 1986 WL 15564]. During discovery Celanese uncovered a reference, the Sattler patent, which disclosed subject matter similar to that claimed in the '050 and

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

840 F.2d 1565, 56 USLW 2540, 6 U.S.P.Q.2d 1010

**(Cite as: 840 F.2d 1565)**

'299 patents. Discovery also revealed that PPG knew of, but had not disclosed, the reference to the United States Patent and Trademark Office (PTO) during prosecution of the patents in suit. To allow for filing and prosecution of reissue applications in the PTO, PPG moved for a stay of the district court's proceedings. The court, over the objections of Celanese, granted PPG's motion and stayed further judicial proceedings pending the outcome of the reissue proceedings. PPG agreed to be bound on all issues considered by the outcome of the reissue proceedings.

The Board of Patent Appeals and Interferences (Board) affirmed the examiner's rejection of all the claims in the reissue applications as unpatentable under 35 U.S.C. §§ 131, 132 (1982) for inequitable conduct and under 35 U.S.C. § 103 (1982 and Supp. III 1985) in view of the Sattler patent. On appeal, this court affirmed the Board's rejection of the reissue applications based on inequitable conduct. *1567 *In re Jerabek,* 789 F.2d 886, 229 USPQ 530 (Fed.Cir.1986). Celanese actively participated as protestor and intervenor throughout all stages of these proceedings.

After our decision in *Jerabek,* the district court awarded Celanese attorney fees under 35 U.S.C. § 285 (1982). *PPG Indus.,* 658 F.Supp. 555, 3 USPQ2d 1683. However, Celanese appeals because it applied to the district court for an award of $1,281,807.24 in attorney fees and disbursements, but the district court awarded only $320,328.97, of which $273,107.31 was for attorney fees. *PPG Indus.,* 658 F.Supp. at 558, 566, 3 USPQ2d at 1684, 1690. Specifically, Celanese appeals the trial court's denial of its request for the following categories of fees:

1. attorney fees paid to Celanese's outside counsel in opposing PPG's reissue applications before the PTO;

2. attorney fees paid to outside counsel in opposing PPG's consolidated appeal to this court from the decisions of the Board; and

3. attorney fees for in-house counsel during the time period up to January 1, 1980 in which in-house counsel were lead trial counsel.

## ISSUES

<mark>Whether the district court abused its discretion in denying Celanese attorney fees incurred for:</mark>

<mark>1. its participation in the reissue proceedings instituted by PPG in the PTO;</mark>

2. its participation in PPG's consolidated appeal of the Board's decisions to this court; and

3. the services of its in-house litigation counsel.

## OPINION

[1] Our appellate jurisdiction in this case turns on whether the district court issued a final decision. *See* 28 U.S.C. § 1295(a)(1)(1982). "A 'final decision' generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945) (citation omitted); *see Stringfellow v. Concerned Neighbors in Action,* 480 U.S. 370, 107 S.Ct. 1177, 1181, 94 L.Ed.2d 389 (1987) (quoting *Catlin,* 324 U.S. at 233, 65 S.Ct. at 633–34). Here the district court decided the attorney fees award on its merits and entered its "final and appealable order." *PPG Indus.,* 658 F.Supp. at 566, 3 USPQ2d at 1690. *See Bandag, Inc. v. Al Bolser Tire Stores, Inc.,* 719 F.2d 392, 393, 219 USPQ 1049, 1049–50 (Fed.Cir.1983) (court that enters judgment is best qualified to assert whether it intended that judgment as final). Under these circumstances, the district court's order is a final decision over which we may exercise appellate review.

In reviewing an award of attorney fees under 35 U.S.C. § 285, generally we first consider whether the district court's fact finding of an exceptional case was clearly erroneous, and whether the district court invoked the proper legal standards in making this decision. *Reactive Metals and Alloys Corp. v.*

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

840 F.2d 1565, 56 USLW 2540, 6 U.S.P.Q.2d 1010
**(Cite as: 840 F.2d 1565)**

*ESM, Inc.,* 769 F.2d 1578, 1582–83, 226 USPQ 821, 824 (Fed.Cir.1985). Because the parties in this case do not dispute either the findings or legal analysis underlying the district court's exceptional case determination, however, these issues are not before us.

After concluding this was an exceptional case, the district court went on to exercise its discretion in awarding fees. *PPG Indus.,* 1 USPQ2d at 1585–86. This brings us to the next step in our analysis: determining whether the district court abused its discretion in making the award. *Reactive Metals,* 769 F.2d at 1583, 226 USPQ at 824. That is the sole question before us on appeal. Specifically, Celanese must convince us that the district court abused its discretion in excluding the noted categories of fees from the award.

In determining if the district court abused its discretion in excluding these categories of fees, the principles guiding this court are whether the district court's decision was based on an erroneous conclusion of law or clearly erroneous factual findings, or whether the district court committed a clear error of judgment. **\*1568** *Amstar Corp. v. Envirotech Corp.,* 823 F.2d 1538, 1542, 3 USPQ2d 1412, 1415 (Fed.Cir.1987); *Heat & Control, Inc. v. Hester Indus., Inc.,* 785 F.2d 1017, 1022, 228 USPQ 926, 930 (Fed.Cir.1986); *Seattle Box Co. v. Industrial Crating & Packing Inc.,* 756 F.2d 1574, 1581, 225 USPQ 357, 363 (Fed.Cir.1985). To prevail on appeal, this is what Celanese must establish.

### I. The Reissue Proceedings

[2] Celanese requested $275,827.25 for legal services rendered before the PTO in opposing PPG's reissue applications. After reviewing conflicting, non-controlling case law, the trial court denied the amount requested in its entirety, concluding that the better view was not to award attorney fees for any of the services rendered before the PTO. *PPG Indus.,* 658 F.Supp. at 560–61, 3 USPQ2d at 1686. The district court cited *Webb v. Dyer County Board of Education,* 471 U.S. 234, 105 S.Ct. 1923, 85 L.Ed.2d 233 (1985), as support for

its conclusion. *Id.* Webb held that attorney fees should not be awarded in non-mandatory, non-judicial proceedings where the party has the option of proceeding directly to Court unless the party can demonstrate that the work product "was both useful and of a type ordinarily necessary." *Webb,* 471 U.S. at 243, 105 S.Ct. at 1929. The district court reasoned:

In this case, as in *Webb,* resort to the non-judicial body is non-mandatory, and a party has the option of proceeding directly to Court.

The Court is fully aware of [Celanese's] contention that resort to the [PTO] in this case was not "voluntary" in the strictest sense, since the proceedings in that forum substituted for judicial proceedings. We do not believe that this compels payment of fees.... Furthermore, Celanese cannot demonstrate that [its] work before the [PTO] is "ordinarily necessary" in a case of this type.

*PPG Indus.,* 658 F.Supp. at 561, 3 USPQ2d at 1686–87.

Due to the unique circumstances of this case, the district court erred in relying on *Webb.* The PTO permitted Celanese's participation in PPG's reissue applications only because of the now repealed "Dann amendments." Although proceedings before the PTO ordinarily are *ex parte,* in the late 1970's the regulations governing PTO reissue proceedings were amended by the so-called "Dann amendments" to allow *inter partes* protestor participation. *See generally PIC, Inc. v. Prescon Corp.,* 485 F.Supp. 1302, 1303–05, 205 USPQ 228, 233–34 (D.Del.1980); *see also* 47 Fed.Reg. 21,749 (1982). The purpose of these amendments was to economize the time and expense for both the courts and the litigants. *See Fisher Controls Co. v. Control Components, Inc.,* 443 F.Supp. 581, 582, 196 USPQ 817, 819 (S.D.Iowa 1977); *see also New Patent Office Rules May Aid Patent Litigation,* 9 The Third Branch 7, 7–8 (Sept. 1977). In practice, as clearly demonstrated by this case, the desired results were not achieved. After enactment of legislation provid-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

840 F.2d 1565, 56 USLW 2540, 6 U.S.P.Q.2d 1010
**(Cite as: 840 F.2d 1565)**

ing for reexamination, the PTO repealed the "Dann amendments" in 1982, thus eliminating extensive *inter partes* protestor participation in reissue proceedings. 47 Fed.Reg. 21,746 (1982).

For Celanese, participation in PPG'S reissue application proceedings was not optional. The parties and the district court clearly intended to replace the district court litigation with the reissue proceedings. PPG forced Celanese to perform in the PTO precisely the same type of work Celanese would have performed had the case proceeded to trial. Indeed, PPG argued before the trial court that these reissue proceedings would permit both sides to present their positions for reconsideration by the PTO in an *inter partes* setting and thus shorten or possibly obviate the need for a trial.

Therefore, because the "Dann amendments" permitted Celanese's extensive participation in the reissue proceedings, and Celanese in fact had no other option available, *Webb* provides no support for the trial court's denial of attorney fees for work performed in the reissue proceedings. Thus in denying these attorney fees, the trial court misapplied the law applicable to fee awards. On remand, the district court need not evaluate which portions of Celanese's**1569** work product in the reissue proceedings were "useful and of a type ordinarily necessary," *Webb,* 471 U.S. at 243, 105 S.Ct. at 1929; as the entire work product was necessary to the case. *See Scott Paper Co. v. Moore Business Forms, Inc.,* 604 F.Supp. 835, 838, 224 USPQ 565, 566 (D.Del.1984) (reissue proceedings under peculiar circumstances of this litigation necessary to the case). Recognizing that the trial court has *broad* discretion in calculating the amount of fees, *cf. Lam Inc. v. Johns–Manville Corp.,* 718 F.2d 1056, 1068–69, 219 USPQ 670, 678 (Fed.Cir.1983), we hold only that Celanese is entitled to reasonable attorney fees based upon the premise that the reissue proceedings substituted for the district court litigation on all issues considered by the PTO and the Board.

*II. Federal Circuit Appeal*

In its application for fees, Celanese requested $73,140.00 for legal services rendered to it as an intervenor in PPG's consolidated appeal of the Board's decisions to this court. The district court denied this amount in its entirety citing *Rohm & Haas Co. v. Crystal Chemical Co.,* 736 F.2d 688, 222 USPQ 97 (Fed.Cir.1984), and Federal Circuit Local Rule 20(a)(1). The court stated that "in light of the fact that application for attorney's fees may be made to the Federal Circuit under its Rule 20(a)(1) [w]e believe that the entire amount of the fees spent before the Federal Circuit should be disallowed...." *PPG Indus.,* 658 F.Supp. at 561–62, 3 USPQ2d at 1687.

[3] Here, too, the district court legally erred. Rule 20 does not prohibit the district court from awarding fees for prior appeals where such appeals are an integral part of the ongoing litigation; indeed *Rohm & Haas,* 736 F.2d at 692, 222 USPQ at 100, supports the proposition that the power to award attorney fees for appellate work is not the exclusive domain of an appellate court. Our conclusion is consistent with the holding of the Supreme Court in *Perkins v. Standard Oil Co.,* 399 U.S. 222, 90 S.Ct. 1989, 26 L.Ed.2d 534 (1970), and with the treatment of attorney fees awards under other statutory schemes by other circuits. *See Local 17, Int'l Ass'n of Heat v. Young,* 775 F.2d 870, 872–73 (7th Cir.1985) (district court's award of attorney fees for work performed before Supreme Court appropriate in Labor Management Reporting & Disclosure Act case); *Smith v. CMTA–IAM Pension Trust,* 746 F.2d 587, 588–91 (9th Cir.1984) (action under Employee Retirement Income Security Act remanded to district court to reconsider award of attorney fees for appellate work); *Aspen Highlands Skiing Corp. v. Aspen Skiing Co.,* 738 F.2d 1509, 1527 (10th Cir.1984) (antitrust action remanded to district court to award appropriate attorney fees for appellate work), *aff'd,* 472 U.S. 585, 105 S.Ct. 2847, 86 L.Ed.2d 467 (1985); *Williams v. Alioto,* 625 F.2d 845, 850 (9th Cir.1980) (case remanded to district court for determination of attorney fees on appeal in civil rights action), *cert. denied,* 450 U.S. 1012,

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

840 F.2d 1565, 56 USLW 2540, 6 U.S.P.Q.2d 1010
**(Cite as: 840 F.2d 1565)**

101 S.Ct. 1723, 68 L.Ed.2d 213 (1981).

[4] Under the peculiar circumstances of this case, PPG's appeal in *Jerabek* was an integral part of the reissue proceedings that virtually replaced the district court litigation. This totality of proceedings constituted the basis for the district court's finding that the case was "exceptional" within the meaning of 35 U.S.C. § 285. The trial court recognized this in November 1982 when it stayed all further proceedings in the district court "until the conclusion of the litigation before the [PTO] and the ... Federal Circuit." Celanese's efforts before this court in the *Jerabek* appeal were merely an extension of the work already performed before the PTO—work which replaced the district court litigation. Therefore, on remand, the district court cannot exclude from the award reasonable fees for services performed by Celanese's attorneys in PPG's appeal to this court in *Jerabek*.

### III. In–House Counsel Fees

Celanese requested $338,400.00 for legal services rendered by in-house counsel during the time period that they were lead litigation counsel. The district court denied all such fees on the basis of a lack of **\*1570** documentation, citing the lack of contemporaneous time records and an inadequate basis for examining the reasonableness of Celanese's requested fees. *PPG Indus.,* 658 F.Supp. at 562, 3 USPQ2d at 1687.

[5][6] During the time that in-house counsel acted as lead trial counsel there was no judicial requirement for contemporaneous time records to qualify for a fee award. *Cf. New York Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1147 (2d Cir.1983). "While contemporaneous time records are the most desirable way of proving time spent, such is not the only means." *Delaware Valley Citizens v. Commonwealth of Pa.,* 581 F.Supp. 1412, 1420 (E.D.Pa.1984) (fee award affirmed but *increase* in fee award based on superior quality of counsel's performance reversed), *aff'd,* 762 F.2d 272 (3d Cir.1985), *aff'd-in-part and rev'd-in-part on other grounds,* 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986), *modified on other grounds,* 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987). Attorney fees are allowable if they are based on records that are substantially reconstructed and reasonably accurate. *Id.* We disagree with the trial court that Celanese did not present sufficient reconstructed records on which to base an award. The record contains approximately 500 pages of documentation consisting of affidavits supported by extensive corroborative business records. This documentation was prepared in November 1981—only 22 months after the end of the time period at issue. Based on this record, we conclude that the trial court erred in concluding that it could not examine the reasonableness of in-house counsel's efforts. Although we hold that the failure to award any fees was an abuse of discretion, we call attention to the well-established rule that insufficient documentation may warrant a reduction in the fees. *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) ("A district judge may not, in my view, authorize the payment of attorney's fees unless the attorney involved has established by clear and convincing evidence the time and effort claimed and has shown that the time expended was necessary to achieve the results obtained." *Id.* at 440–41, 103 S.Ct. at 1943 (Burger, C.J., concurring)); *see also New York Ass'n For Retarded Children,* 711 F.2d at 1148; *Wojtkowski v. Cade,* 725 F.2d 127, 130 (1st Cir.1984); *Souza v. Southworth,* 564 F.2d 609, 612 (1st Cir.1977). The amount of fees to be awarded as in-house counsel fees here must necessarily be left to the judgment of the district court. We intimate no opinion on the amount which Celanese is entitled to recover for these services.

Although not at issue here, the district court indicated that in calculating fees for in-house counsel it was compelled to reject the use of a cost-based standard and was limited to the use of a private firm market rate standard. *PPG Indus.,* 658 F.Supp. at 562, 3 USPQ2d at 1687. We note that in this circuit reasonable rates for in-house counsel may be calculated based on cost plus overhead. *Goodrich v. De-*

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

840 F.2d 1565, 56 USLW 2540, 6 U.S.P.Q.2d 1010

**(Cite as: 840 F.2d 1565)**

partment of the Navy, 733 F.2d 1578, 1579 (Fed.Cir.1984), *cert. denied*, 469 U.S. 1189, 105 S.Ct. 958, 83 L.Ed.2d 965 (1985). The implication of using a private firm market standard is to allow a nonlegal business corporation to use the services of in-house counsel, and reap a profit therefrom. We know of no authority to support this practice. *See* National Treasury Employees Union v. Department of Treasury, 656 F.2d 848, 851–55 (D.C.Cir.1981).

CONCLUSION

The order of the district court is reversed and the case remanded for proceedings consistent with this opinion.

REVERSED AND REMANDED

BISSELL, Circuit Judge, additional views:

Abuse of discretion is a "verbal coat of ... many colors." *See* Friendly, Indiscretion About Discretion, 31 Emory L.J. 747, 762–63 (1982) (quoting United States v. L.A. Tucker Truck Lines, 344 U.S. 33, 39, 73 S.Ct. 67, 70, 97 L.Ed. 54 (1952) (Frankfurter, J., dissenting)). Accordingly, legal scholars attempting to define abuse of discretion after extensive rhetoric often come to the conclusion that no better definition **\*1571** exists than Justice Stewart's definition of pornography—you know it when you see it. Because of a potential inconsistency in the law of this circuit, nevertheless, I am compelled to comment on how this court reviews whether a district court has abused its discretion in arriving at a particular decision.

I.

In one of the first decisions of this court articulating our appellate review standard for abuse of discretion, Seattle Box Co. v. Industrial Crating & Packing Inc., 756 F.2d 1574, 225 USPQ 357 (Fed.Cir.1985), we stated:

Abuse of discretion may be established by showing that the district court either made an error of law, or a clear error of judgment or made findings which were clearly erroneous.

756 F.2d at 1581, 225 USPQ at 363.

After listing the elements necessary to support an infringement damage award based on lost profits, this court in *Seattle Box* held that because the infringer had failed to establish that the district court made any error of law or was clearly erroneous in its fact findings regarding these elements, the district court's award of damages did not constitute an abuse of discretion. *Id.* In *Seattle Box*, this court *applied* our standard of review as follows: the discretionary decision, if *founded* on an error of law or clearly erroneous fact findings, constitutes an abuse of discretion.

On reviewing a patent infringement damage award, this court in Amstar Corp. v. Envirotech Corp., 823 F.2d 1538, 3 USPQ2d 1412 (Fed.Cir.1987), provided a translation of the standard as applied in *Seattle Box* by stating:

To prevail on its appeal from the damages judgment, [the infringer] must convince this court that the district court's decision is based on an erroneous conclusion of law, clearly erroneous factual findings, or a clear error of judgment amounting to an abuse of discretion.

823 F.2d at 1542, 3 USPQ2d at 1415. In my view, the *applied standard* in *Seattle Box* comports with the *stated standard* in *Amstar*.

In Heat & Control, Inc. v. Hester Indus., Inc., 785 F.2d 1017, 1022, 228 USPQ 926, 930 (Fed.Cir.1986), this court set forth the standard in yet different, but entirely consistent, language:

An abuse of discretion occurs when (1) the court's decision is "clearly unreasonable, arbitrary or fanciful" ( Northrop Corp. [v. McDonnell Douglas Corp.], 751 F.2d at 399 [ (D.C.Cir.1984) ] ); (2) the decision is based on an erroneous conclusion of law ( Ariel [v. Jones ], 693 F.2d [1058] at 1060 [ (11th Cir.1982) ], citing Premium Service Corp. [v. Sperry & Hutchinson Co.], 511 F.2d [225] at 229 [ (9th Cir.1975) ]

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

840 F.2d 1565, 56 USLW 2540, 6 U.S.P.Q.2d 1010
**(Cite as: 840 F.2d 1565)**

); (3) the court's findings are clearly erroneous ( *Deitchman* [*v. E.R. Squibb & Sons, Inc.*], *740 F.2d [556] at 564* [ (7th Cir.1984) ] ); or (4) the record contains no evidence on which the district court rationally could have based its decision ( *e.g., Ariel,* 693 F.2d at 1060). However, "[t]he phrase [abuse of discretion] means ... that the court has a range of choice, and that its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law." *Kern v. TXO Production Corp.,* 738 F.2d 968, 970 (8th Cir.1984); *Dart Industries, Co.,* 649 F.2d [646] at 648 [ (9th Cir.1980) ], *citing Premium Service Corp.,* 511 F.2d at 229. The court in *Premium* noted the hesitancy with which reviewing courts should address a matter left to the discretion of the district court: "Such abuses must be unusual and exceptional; we will not merely substitute our judgment for that of the trial judge." 511 F.2d at 229 (citation omitted).

785 F.2d at 1022, 228 USPQ at 930.

## II.

"[D]iscretionary choices are not left to a [district] court's 'inclination, but to its judgment; and its judgment is to be guided by sound legal principles.' " Friendly, *supra,* at 784 (quoting statement in *United States v. Burr,* 25 F.Cas. 30, 35 (C.C.Va.1807) (No. 14,692d) by Chief Justice Marshall during his tenure as trial judge). Thus on appeal *1572 of a discretionary district court ruling, we must presuppose that the district court understood and applied the applicable law and took into account all the circumstances of the case. Reversal, however, is warranted if the appellant establishes that such presupposition was misplaced—that the district court misunderstood or misapplied the applicable law or made clearly erroneous factual findings. Although various errors of law, fact, substance and form, singly or in combination, may affect the relief granted at the trial level, if the error did not actually form the basis for the determination appealed, no abuse of discretion will have occurred because the error is harmless. When the error,

however, does form the basis for the district court's decision, we must vacate and remand because the decision results from an improvident exercise of the district court's discretion.

If the district court makes proper findings of fact and correctly applies the relevant law to those facts, or if none underlie the discretionary decision, can it then be established in this circuit that the district court has committed a clear error of judgment? Yes, but only if we "come close to finding that the trial court had taken leave of its senses." Friendly, *supra,* at 763. Discretion, in this sense, is abused if the record contains no basis on which the district court rationally could have made its decision or if the judicial action is arbitrary, fanciful or clearly unreasonable. This is another way of saying that discretion is abused only where no reasonable man would take the view adopted by the district court. If reasonable men could differ as to the propriety of the action taken by the trial court, then it cannot be said that the district court abused its discretion. Such abuses must be unusual and exceptional; we will not merely substitute our judgment for that of the district judge.

## III.

In conclusion, our cases which set forth our standard of review of a discretionary ruling by a district court are consistent. To overturn a discretionary ruling of a district court, the appellant must establish that the ruling is based upon clearly erroneous findings of fact or a misapplication or misinterpretation of applicable law or that the ruling evidences a clear error of judgment on the part of the district court.

C.A.Fed. (Ky.),1988.
PPG Industries, Inc. v. Celanese Polymer Specialties Co., Inc.
840 F.2d 1565, 56 USLW 2540, 6 U.S.P.Q.2d 1010

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 1565296 (D.Md.)
**(Cite as: 2012 WL 1565296 (D.Md.))**

**H**

Only the Westlaw citation is currently available.

United States District Court,
D. Maryland.
IA LABS CA, LLC, Plaintiff
v.
NINTENDO CO., LTD. and Nintendo of America,
Inc., Defendants.

Civil No. PJM 10–833.
May 1, 2012.

Robert Scott Brennen, Katherine B. Hill, Miles and Stockbridge PC, Baltimore, MD, Adam G. Price, Andrew G. Dinovo, Jay David Ellwanger, Raymond W. Mort, III, Stefanie T. Scott, William M. Parrish, Dinovo Price Ellwanger and Hardy LLP, Austin, TX, for Plaintiff.

Marie Celeste Bruce, Rifkin Livingston Levitan and Silver LLC, Bethesda, MD, Terrance Jay Wikberg, Perkins Coie LLP, Washington, DC, C. Mark Kittredge, Perkins Coie LLP, Phoenix, AZ, Jerry A. Riedinger, Jessica Lynn Rossman, Stevan R. Stark, Tyler C. Peterson, Perkins Coie LLP, Seattle, WA, Joseph A. Rhoa, Nixon and Vanderhye PC, Arlington, VA, for Defendants.

***MEMORANDUM OPINION***
PETER J. MESSITTE, District Judge.

**\*1** IA Labs, CA LLC ("IA Labs") sued Nintendo Co., Ltd. and Nintendo of America. Inc. (collectively, "Nintendo") alleging infringement of two patents—U.S. Patent No. 7,121,982 (the "'982 patent") and U.S. Patent No. 7,331,226 (the "'226 patent"). On February 9, 2011, the parties filed a joint status report wherein IA Labs withdrew its claim arising under the '226 patent, indicating that the prior day it had executed a covenant not to sue under that patent, On February IX.2011. IA Labs filed a statutory disclaimer of the '226 patent. On April 6, 2011, the Court granted Nintendo's Motion to Dismiss the claim of infringement of the '226

patent and set out a briefing schedule for a Motion for Attorneys' Fees under 35 U.S.C. § 285 regarding the '226 patent.[FN1] Presently before the Court is Nintendo's Motion for Attorney Fees [Docket No. 188] and Nintendo's Motion to Review the Clerk's Order Taxing Costs [Docket No. 228], both relating to the claim of infringement of the '226 patent.

> FN1. IA Labs' continued to pursue its claim of infringement of the '982 patent, and, on February 29, 2012, the Court granted summary judgment for Nintendo on that claim.

For the reasons that follow, Nintendo's Motion for Attorney Fees [Docket No. 188] is **GRANTED IN PART** and **DENIED IN PART** and Nintendo's Motion to Review the Clerk's Order faxing Costs [Docket No. 228] is **GRANTED.**

**I.**

IA Labs filed its Complaint in this case on April 2, 2010. On August 3, 2010. Nintendo filed its Answer and Counterclaim, asserting, among other things, that the '226 patent was statutorily invalid. Nintendo amply set out an "on-sale bar" defense and counterclaim in its interrogatory responses and proposed Amended Answer, both filed in September, 2010. On October 21, 2010. IA Labs indicated to Nintendo that it would abandon its claim arising out of the '226 patent. By January 2011. IA Labs had not yet dismissed its claim of infringement of the '226 patent, and Nintendo filed a Motion to Dismiss said claim. Dismissal of the claim, as indicated, came on April 6, 2011.

**II.**

In patent actions, the Court has discretion to award reasonable attorneys fees to the prevailing party in exceptional cases. 35 U.S.C. § 285. To do so, the Court must find that the prevailing party has proved that the case is exceptional by clear and convincing evidence. *See Forest Labs., Inc. v. Ab-*

Not Reported in F.Supp.2d, 2012 WL 1565296 (D.Md.)
**(Cite as: 2012 WL 1565296 (D.Md.))**

Page 2

bott Labs., 339 L.3d 1324, 1327 (Fed.Cir.2003). Exceptional cases typically involve bad faith litigation or inequitable conduct by the patentee in procuring the patent. *See Cambridge Products, Ltd. v. Perm Nutrients, Inc.,* 962 L.2d 1048. 1050–51 (Fed.Cir.1992). "The prevailing party may prove the existence of an exceptional case by showing: inequitable conduct before the PTO; litigation misconduct: vexatious, unjustified, and otherwise-bad faith litigation: a frivolous suit or willful infringement." *Brasseler. U.S.A. L.L.P. v. Stryker Sales Corp.* 267 F.3d 1370. 1380 (Fed.Cir.2001) (citing *Hoffman–La Roche Inc. v. Invamed Inc.,* 213 F.3d 1359, 1365 (Fed.Cir.2000)).

"Absent litigation misconduct or misconduct in securing the patent, sanctions under § 285 may be imposed against the patentee only if both (1) the patentee brought the litigation in bad faith; and (2) the litigation is objectively baseless." *Eon–Net LP v. Flagstar Bancorp.,* 653 F.3d 1314, 1324 (Fed.Cir.2011) (citing *Brooks Furniture Mfg., Inc. v. Dutailier int'l. Inc.,* 393 F.3d 1378, 1381 (Fed.Cir.2005)). An inference of bad faith is warranted where the patentee is "manifestly unreasonable in assessing infringement, while continuing to assert infringement in court." *Eltech Sys. Corp. v. PPG Indus., Inc.,* 903 F.2d 805, 811 (Fed.Cir.1990) . "A frivolous infringement suit is one which the patentee knew or. on reasonable investigation, should have known was baseless." *Stephens v. Tech Int'l, Inc.,* 393 F.3d 1269. 1273–74 (Fed.Cir.2004) (quoting *Haynes Int'l Inc. v. Jessop Steel Co.,* 8 F.3d 1573, 1579 (Fed.Cir.1993).

### A.

**\*2** Nintendo argues that this is an exceptional case because IA Labs brought litigation of the '226 patent in bad faith and the litigation was objectively baseless. Nintendo argues that, beyond dispute, the invention of the '226 patent was publicly demonstrated and on-sale more than one year before the patent application was filed, thereby making it statutorily invalid pursuant to 35 U.S.C. § 102(b). Because the persons involved in these invalidating

activities were principals of IA Labs. Nintendo argues that IA Labs knew or should have known that the '226 patent was invalid before it commenced the lawsuit. In any event, says Nintendo, Nintendo's Answer and Counterclaim clearly alerted IA Labs to the invalidity issues at least two months before IA Labs indicated that it would drop the claim and six months before it actually did so.

IA Labs argues that there is a presumption that a claim of infringement of a duly-granted patent was asserted in good faith. Further, it argues that the litigation cannot have been brought in bad faith, because the "litigation" comprised claims of infringement of two patents, and the claims relating to the '982 patent proceeded after the '226 patent was dismissed. IA Labs also disputes that it knew or should have known that the '226 patent was invalid and cites to IA Labs' witnesses who testified that the product that was publicly demonstrated and on-sale lacked essential teachings of the '226 patent.

### B.

The Court agrees with Nintendo that reasonable attorneys' fees are warranted with respect to the '226 patent claim are warranted under 35 U.S.C. § 285.

First, Nintendo is the prevailing party, as the Court dismissed all claims relating to the '226 patent from the suit, following IA Labs' disclaimer of the patent (which rendered it unenforceable). *See, e.g., Highway Equipment Co., Inc. v. Feco, Ltd.,* 469 F.3d 1027, 1035 (Fed.Cir.2006); *Inland Steel Co. v. LTV Steel Co.,* 364 F.3d 1318, 1321 (Fed.Cir.2004); *Ellipse Corp. v. Ford Motor Co.,* 452 F.2d 163, 172 (7th Cir.1971).

Second, this is an "exceptional" case: IA Labs brought an objectively baseless claim, which the Court finds was brought in bad faith. Interaction Laboratories, Inc.—the original '226 patent holder—developed a product known as the Kilowatt that embodied the invention of the '226 patent. It was sharply apparent that the Kilowatt had been publicly demonstrated at trade shows, disclosed in numerous publications, and offered for sale more

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 1565296 (D.Md.)
**(Cite as: 2012 WL 1565296 (D.Md.))**

than one year prior to the filing of the patent application. I bus, the '226 patent was, without question. Statutorily invalid pursuant to the "on-sale bar." *See* 35 U.S.C. § 102(b); *Pfaff v. Wells Elecs.., Inc.,* 525 U.S. 55, 119 S.Ct. 304, 142 L.Ed.2d 261. 67 (1998). Since IA Labs knew of these invalidating activities before it sued Nintendo for infringement, the Court can only conclude that it sued on the '226 patent in bad faith.[FN2] *See, e.g., Shelco, Inc. v. Dow Chem. Co.,* 466 F.2d 613, 618 (7th Cir.1972); *Microstrategy Inc. v. Crystal Decisions, Inc.,* 555 F.Supp.2d 475, 480 (D.Del.2008).

> FN2. The Court rejects IA Labs' argument that the litigation could not have been brought in bad faith because one of the two claims asserted was viable (although, ultimately, unsuccessful) This ignores the many cases that award attorneys' fees to a party even though that party did not prevail on every claim or defense, and would also lead to the absurd result of granting plaintiffs immunity from fees on any baseless claim, so long as they include a viable claim within the same litigation.

**\*3** The evidence in the record demonstrates that IA Labs was intimately familiar with the many instances where Interaction Laboratories, Inc. publicly demonstrated the Kilowatt. IA Labs' CTO, Greg Merril—also the co-founder and former CLO and President of Interaction Laboratories, Inc.—was personally involved in the on-sale bar activities. Further, IA Labs' Complaint includes numerous details regarding Interaction Laboratories, Inc., confirming that counsel had conducted a comprehensive investigation of its commercial activities. IA Labs does not and cannot dispute that it was aware of the on-sale bar activities. Instead, it argues that certain features of the '226 patent were missing from the Kilowatt. This argument is disingenuous. IA Labs does not actually argue that the '226 patent is valid. In fact, IA Labs took the extraordinary step of disclaiming the patent, implicitly acknowledging its invalidity. For these reasons, the Court finds that

IA Labs clearly knew that the patent was invalid when it commenced the litigation. *See, e.g., Interpart Corp. v. Italia,* 777 F.2d 678, 686 (Fed.Cir.1985) (affirming an award of attorneys' fees where plaintiff knew and failed to disclose to the PTC) that it had sold products more than a year prior to the application for patent) (overruled on other grounds); *Hughes v. Novi Am., Inc.,* 724 F.2d 122, 125 (Fed.Cir.1984) (affirming an award of attorneys' fees where plaintiff knew of patent-barring sales and advertising of the "patented" product).

That IA Labs waited more than two months after Nintendo asserted counterclaims of invalidity to inform Nintendo that it would abandon its claim under the ' 226 patent and four more months to actually do so may be evidence of neglect, but is also evidence of bad faith. *See. e.g., Computer Docking Station Corp. v. Dell, Inc.,* 519 F.3d 1366, 1379 (Fed.Cir.2008) ("If the patentee prolongs litigation in bad faith, an exceptional finding may be warranted.") (citing *Rohm & Haas Co. v. Crystal Chem. Co.,* 736 F.2d 688, 691 (Fed.Cir.1984)); *Microstrategy.,* 555 L. Supp.2d at 480 (awarding fees where "in the face of clear and convincing evidence of anticipation." the plaintiff "was manifestly unreasonable in neglecting to reevaluate its position and continuing to assert claims under the [anticipated] patent": *Realtek Semiconductor, Corp. v. Marvell Semiconductor, Inc.,* No. C–04–4265, 2005 WL 3634617, at *5 (N.D.Cal. Nov. 21, 2005) (finding that plaintiff acted in bad faith where, among other things, it continued to pursue the lawsuit after receiving information demonstrating that the patent was invalid).

For the same reason that the patent's invalidity was or should have been manifestly obvious to IA Labs so as to indicate subjective bad faith, "no reasonable litigant could realistically expect success on the merits" and the claim was objectively baseless. *Realtek Semiconductor,* 2005 WL 3634617, at *6 (quoting *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.,* 508 U.S. 49, 60, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993)); *see also*

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 1565296 (D.Md.)

**(Cite as: 2012 WL 1565296 (D.Md.))**

*MarcTec. LLC v. Johnson & Johnson,* 664 F.3d 907, 916 (Fed.Cir.2012) (finding that to be objectively baseless for the purpose of attorneys' fees, the case "must have no objective foundation, and the plaintiff must actually know this") (quoting *iLOR, LLC v. Google, Inc.,* 631 F.3d 1372, 1377 (Fed.Cir.2011)).

### C.

**\*4** Having determined that this is in fact an exceptional case, "the court must then determine whether an award of attorney fees is appropriate and, if fees are appropriate, the amount of the award." *Eon–Net LP v. Flagstar Bancorp.,* 653 F.3d 1314, 1323–24 (Fed.Cir.2011) (citing *Cybor Corp. v. FAS Techs., Inc.,* 138 F.3d 1448, 1460 (Fed.Cir.1998) (en banc)). Nintendo seeks a total of $319,752.26 in attorneys' fees and $17,924.82 in litigation expenses. Included in this amount are fees incurred as a result of filing a petition for reexamination before the PTO. IA Labs argues that, even if the Court grants Nintendo's Motion, it should not award fees For this non-mandatory, non-judicial proceeding. Further, IA Labs argues that the hourly rate sought by Nintendo exceeds that permitted by the Local Rules of this Court.

In determining whether to exercise its discretion to award fees, the Court considers a number of factors, such as "the closeness of the case, the tactics of counsel, the conduct of the parties, and any other factors that may contribute to a fair allocation of the burdens of litigation as between winner and loser." *S.C. Johnson & Son, Inc. v. Carter–Wallace, Inc.,* 781 F.2d 198, 201 (Fed.Cir.1986). Here, given the extent of the effort required to defend against the objectively baseless claim, the Court finds that an award of fees and expenses is appropriate. *See, e.g., Microstrategy,* 555 F.Supp.2d at 482.

The Court follows the "lodestar" framework and methodology for the calculation of reasonable attorneys' fees, and multiplies the number of hours reasonably expended on the matter by a reasonable hourly rate. *See Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983);

*Lyle v. Food Lion, Inc.,* 954 F.2d 984, 988 (4th Cir.1992). Here, the Court accepts Nintendo's calculation of the number of hours reasonably expended on the matter as a result of IA Labs' baseless claim-including those related to the reexamination proceeding before the PTO-from the commencement of the action through the time that IA Labs orally represented that it would drop this claim. *See Central Soya Co., Inc. v. Geo. A. Hormel & Co.,* 723 F.2d 1573, 1578 (Fed.Cir.1983) ("We interpret attorney fees to include those sums that the prevailing party incurs in the preparation of and performance of legal services related to the suit."); *see also, e.g., Mathis v. Spears,* 857 F.2d 749, 758 (Fed.Cir.1988); *Synthon IP, Inc. v. Pfizer, Inc.,* 484 F.Supp.2d 437, 445 (E.D.Va.2007); *Howes v. Med. Components. Inc.,* 761 F.Supp. 1193, 1198 (E.D.Pa.1990). However, the Court declines to award the rates requested. Instead, the Court has recalculated the fees in accordance with the guidelines for hourly rates contained in the Local Rules of this Court. This results in reducing the request for $319,752.26 in attorneys' fees to an award of $218.159.25 in attorneys' fees. The Court awards the total litigation expenses requested, in the amount of $17,924.82.

### III.

**\*5** In its order dismissing the claim of infringement of the '226 patent, the Court specifically "retained jurisdiction to decide [Nintendo's] request for attorneys' fees under 35 U.S.C. § 285 in connection with the assertion of the '226 patent in this lawsuit" and set forth a briefing schedule for Nintendo to file a "Motion for Attorneys' Fees Under 35 U.S.C. § 285 regarding the '226 patent." Nintendo filed its Motion for Attorneys' Fees in accordance with this schedule and filed a Bill of Costs concurrently. The Clerk denied the Bill of Costs as untimely because it was not filed within 14 days of the entry of judgment, as required by the focal Rules.

Nintendo has filed a Motion to Review the Clerk's Order on the grounds that it understood that

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 1565296 (D.Md.)
**(Cite as: 2012 WL 1565296 (D.Md.))**

the Bill of Costs should be filed together with the Motion for Attorneys' fees, and both documents were filed within the timeframe set forth in the Court's order. IA Labs counters that the Clerk properly denied the Bill of Costs because it was not covered by the Court's briefing schedule.

While IA Labs is correct that the Court's order setting forth the briefing schedule for the Motion for Attorneys' Fees did not specifically mention the Bill of Costs, the Court agrees with Nintendo that the two naturally go together. That said, the costs detailed in the Bill of Costs duplicate the expenses requested and granted in the Motion for Attorneys' ices. Accordingly, the Court grants the Motion to Review the Clerk's Order, but declines to grant any additional costs.

### IV.

For the foregoing reasons. Nintendo's Motion for Attorney Fees [Docket No. 188] is **GRANTED IN PART** and **DENIED IN PART** and Nintendo's Motion to Review the Clerks Order Taxing Costs [Docket No. 228] is **GRANTED.**

A separate Order will **ISSUE.**

D.Md.,2012.
IA Labs CA, LLC v. Nintendo Co., Ltd.
Not Reported in F.Supp.2d, 2012 WL 1565296 (D.Md.)

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

761 F.Supp. 1193, 17 U.S.P.Q.2d 1591
**(Cite as: 761 F.Supp. 1193)**

▷

United States District Court,
E.D. Pennsylvania.

Randolph M. HOWES, Janice Kinchen Howes, and Arrow International, Inc.
v.
MEDICAL COMPONENTS, INC., and American Hospital Supply Corp.

Civ. A. No. 84–4435.
Dec. 14, 1990.

Following determination of liability in patent infringement action, plaintiffs petitioned for attorney fees. The District Court, Huyett, J., held that: (1) plaintiffs' New York City counsel were entitled to recover hourly rate for New York community; (2) hourly rates were reasonable; (3) number of hours were reasonably expended, with exception of one local firm; (4) reasonable fees for expert witnesses and consultants were recoverable; (5) counsel's overhead charges were not recoverable; (6) time spent preparing fee petition was reasonable; (7) award of prejudgment interest on attorney fees was not appropriate; and (8) fee award was to be divided in proportion to damages assessed against each defendant.

Ordered accordingly.

West Headnotes

**[1] Federal Civil Procedure 170A 🔗2737.4**

170A Federal Civil Procedure
  170AXIX Fees and Costs
    170Ak2737 Attorney Fees
      170Ak2737.4 k. Amount and elements. Most Cited Cases

Generally, reasonable rate for award of attorney fees corresponds to prevailing market rates in relevant community.

**[2] Patents 291 🔗2001**

291 Patents
  291VII Patent Infringement
    291VII(C) Actions
      291VII(C)8 Costs and Fees
        291k1996 Attorney Fees
          291k2001 k. Amount, rate, and items.
Most Cited Cases
    (Formerly 291k325.11(5))

Although patent infringement action was tried in Philadelphia, relevant community for determining reasonable hourly rates for plaintiffs' New York City counsel was New York City, considering complex nature of past litigation and local counsel's suggestion that out-of-state law firm be used for purpose of litigation. 35 U.S.C.A. § 285.

**[3] Patents 291 🔗2001**

291 Patents
  291VII Patent Infringement
    291VII(C) Actions
      291VII(C)8 Costs and Fees
        291k1996 Attorney Fees
          291k2001 k. Amount, rate, and items.
Most Cited Cases
    (Formerly 291k325.11(5))

Hourly rates charged by plaintiffs' New York City counsel in patent infringement action were reasonable, when compared to other New York City firms that handled complex litigation and in light of skill, experience and expertise of the attorneys. 35 U.S.C.A. § 285.

**[4] Patents 291 🔗2001**

291 Patents
  291VII Patent Infringement
    291VII(C) Actions
      291VII(C)8 Costs and Fees
        291k1996 Attorney Fees
          291k2001 k. Amount, rate, and items.
Most Cited Cases
    (Formerly 291k325.11(2.1), 291k325.11(2))

Plaintiffs' counsel's method of allocating charges between patent infringement action and another related

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 2

761 F.Supp. 1193, 17 U.S.P.Q.2d 1591
**(Cite as: 761 F.Supp. 1193)**

action was reasonable. 35 U.S.C.A. § 285.

**[5]** Patents 291 ⟳2001

291 Patents
  291VII Patent Infringement
    291VII(C) Actions
      291VII(C)8 Costs and Fees
        291k1996 Attorney Fees
          291k2001 k. Amount, rate, and items.
Most Cited Cases
  (Formerly 291k325.11(3))

Plaintiffs in patent infringement action were not entitled to fees for services rendered by local firm which assisted New York City firm in its preparation for trial; it was not clear from evidence submitted that services of local firm were necessary and not simply duplication of services rendered by New York City firm. 35 U.S.C.A. § 285.

**[6]** Patents 291 ⟳2001

291 Patents
  291VII Patent Infringement
    291VII(C) Actions
      291VII(C)8 Costs and Fees
        291k1996 Attorney Fees
          291k2001 k. Amount, rate, and items.
Most Cited Cases
  (Formerly 291k325.11(3))

Plaintiffs in patent infringement action were entitled to attorney fees incurred by counsel in reexamination proceedings; services rendered were reasonably necessary, especially considering how important the reexamination proceedings were to the litigation. 35 U.S.C.A. § 285.

**[7]** Patents 291 ⟳2001

291 Patents
  291VII Patent Infringement
    291VII(C) Actions
      291VII(C)8 Costs and Fees
        291k1996 Attorney Fees
          291k2001 k. Amount, rate, and items.
Most Cited Cases

(Formerly 291k325.11(3))

Hours submitted by plaintiffs' counsel in patent infringement action would not be reduced on ground of duplication; three attorneys at trial and two or three attorneys at depositions did not constitute unreasonable or unnecessary duplication. 35 U.S.C.A. § 285.

**[8]** Patents 291 ⟳1995

291 Patents
  291VII Patent Infringement
    291VII(C) Actions
      291VII(C)8 Costs and Fees
        291k1995 k. Witness fees. Most Cited Cases
  (Formerly 291k325.11(1))

Patents 291 ⟳1999

291 Patents
  291VII Patent Infringement
    291VII(C) Actions
      291VII(C)8 Costs and Fees
        291k1996 Attorney Fees
          291k1999 k. Awards to patentees. Most Cited Cases
  (Formerly 291k325.11(1))

Patent case in which jury made specific finding of willful infringement and court made specific finding that case was exceptional was a proper case for award of reasonable fees for expert witnesses and consultants. 35 U.S.C.A. § 285.

**[9]** Patents 291 ⟳2001

291 Patents
  291VII Patent Infringement
    291VII(C) Actions
      291VII(C)8 Costs and Fees
        291k1996 Attorney Fees
          291k2001 k. Amount, rate, and items.
Most Cited Cases
  (Formerly 291k325.11(1))

Plaintiffs' counsel in patent infringement action were not entitled to recover charges for overhead, such as expenses for secretarial time, word processing equip-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

761 F.Supp. 1193, 17 U.S.P.Q.2d 1591
**(Cite as: 761 F.Supp. 1193)**

ment and library services. 35 U.S.C.A. § 285.

**[10]** Patents 291 ⟷2001

291 Patents
  291VII Patent Infringement
    291VII(C) Actions
      291VII(C)8 Costs and Fees
        291k1996 Attorney Fees
          291k2001 k. Amount, rate, and items.
Most Cited Cases
    (Formerly 291k325.11(3))
    If disbursements sought by plaintiffs' counsel were taxable as costs, plaintiffs were not also entitled to recover that amount in their petition for attorney fees. 35 U.S.C.A. § 285; 28 U.S.C.A. § 1920.

**[11]** Patents 291 ⟷2001

291 Patents
  291VII Patent Infringement
    291VII(C) Actions
      291VII(C)8 Costs and Fees
        291k1996 Attorney Fees
          291k2001 k. Amount, rate, and items.
Most Cited Cases
    (Formerly 291k325.11(1))
    Time spent by plaintiffs' counsel in patent infringement case in preparing fee petition was reasonable for six-year-old case, but since counsel could not recover expenses normally considered to be overhead, fees would not be awarded for time spent on fee petition by secretaries, accounting personnel and word processing personnel. 35 U.S.C.A. § 285.

**[12]** Interest 219 ⟷39(2.20)

219 Interest
  219III Time and Computation
    219k39 Time from Which Interest Runs in General
      219k39(2.5) Prejudgment Interest in General
        219k39(2.20) k. Particular cases and issues.
Most Cited Cases
    Award of prejudgment interest on attorney fees was not appropriate, where counsel had been paid on ongo-

ing basis throughout pendency of action, and fees were not even recoverable until court found the patent infringement case to be exceptional. 35 U.S.C.A. § 285.

**[13]** Patents 291 ⟷2004

291 Patents
  291VII Patent Infringement
    291VII(C) Actions
      291VII(C)8 Costs and Fees
        291k2004 k. Apportionment. Most Cited Cases
    (Formerly 291k325.11(2.1), 291k325.11(2))
    In patent infringement case, attorney fee award was to be divided in proportion to damages assessed against each defendant rather than equally divided between the defendants, where defendants had not contributed equally to injuries sustained. 35 U.S.C.A. § 285.

Patents 291 ⟷2091

291 Patents
  291X Patents Enumerated
    291k2091 k. In general; utility. Most Cited Cases
    (Formerly 291k328(2))
    US Patent 4,071,146. Cited.

**\*1194** Albert E. Fey, New York City and Richard F. McMenamin, Philadelphia, Pa., for plaintiff.

William H. Eilberg, Jenkintown, Pa., for Medical Comp.

John W. Chestnut, Chicago, Ill., for American Hosp. Supply.

MEMORANDUM AND ORDER

HUYETT, District Judge.
    This is a patent infringement action. On April 13, 1990, a jury found defendants liable for willful infringement of the patents in suit. By an order dated on May 22, 1990, I found that this was an "exceptional case" under 35 U.S.C. § 285 and granted plaintiffs' motion for attorney fees.[FN1]

    FN1. Section 285 of Title 35 of the United

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

761 F.Supp. 1193, 17 U.S.P.Q.2d 1591
**(Cite as: 761 F.Supp. 1193)**

States Code provides:

> The court in exceptional cases may award reasonable attorney fees to the prevailing party.

Pursuant to paragraphs 16 and 17 of the Final Judgment and Injunction dated on June 8, 1990, plaintiffs filed their petition for attorney fees and defendants filed their objections. On Wednesday, October 31, 1990, I held oral argument in open court on plaintiffs' petition for attorney fees and rendered a bench opinion granting in part and denying in part plaintiffs' petition.

This memorandum shall supplement my bench opinion rendered on October 31, 1990.

Pursuant to 35 U.S.C. § 285, plaintiffs submitted a petition for attorney fees, costs, and expenses in the amount of $2,037,935.77. In support of that petition, plaintiffs have submitted four affidavits plus supporting exhibits: (1) Affidavit of Albert E. Fey from Fish & Neave; (2) Affidavit of Richard F. McMenamin from Morgan, Lewis & Bockius; (3) Affidavit of Charles H. Lindroot from Synnestvedt & Lechner; and (4) Affidavit Richard H. Smith from Finnegan, Henderson, Farabow, Garrett & Dunner.

Defendants raise approximately nine objections to plaintiffs' petition for attorney fees. I shall discuss each of their objections seriatim.

**\*1195 I.** *Reasonable Hourly Rate*

In *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the United States Supreme Court provided the following general guidelines to courts for determining the amount of a reasonable fee:

> The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services. The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court

may reduce the award accordingly.

> The district court also should exclude from this initial fee calculation hours that were not "reasonably expended."... Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission.

*Id.* at 433–34, 103 S.Ct. at 1939–40. The Federal Circuit in *Devine v. Sutermeister,* 733 F.2d 892 (Fed.Cir.1984), recognized the applicability of *Hensley* to any case "in which Congress has authorized the award of fees to a 'prevailing party'." *Id.* at 897 n. 4.

Although the amount of an award of attorney fees is assessed at the discretion of the district court, the court when determining such an award should keep in mind the philosophy underlying section 285:

> The purpose of § 285 is, in a proper case and in the discretion of the trial judge, to compensate the prevailing party for its monetary outlays in the prosecution or defense of the suit.

*Central Soya Co. v. Geo. A. Hormel & Co.,* 723 F.2d 1573, 1578 (Fed.Cir.1983).

[1] Generally, a reasonable rate corresponds to the prevailing market rates in the relevant community. *Blum v. Stenson,* 465 U.S. 886, 895, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984). Defendants contend that the relevant community in the present case is the area where the litigation took place—i.e. the Philadelphia area, and, therefore, that the rates submitted by plaintiffs must be reasonable when compared to the rates of patent attorneys in the Philadelphia area. *See Water Technologies Corp. v. Calco Ltd.,* 709 F.Supp. 821, 824 (N.D.Ill.1989).

Some courts have allowed rates comparable to those prevailing at an attorney's business location, but have done so only if the plaintiff has a good reason for using non-local counsel. *See, e.g., National Gypsum Co.*

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

761 F.Supp. 1193, 17 U.S.P.Q.2d 1591
**(Cite as: 761 F.Supp. 1193)**

*v. Steel Systems Int'l, Inc.,* 9 U.S.P.Q.2d 2073, 2075, 1988 WL 135780 (D.Or.1988); *Playboy Enter., Inc. v. P.K. Sorren Export Co., Inc. of Florida,* 221 U.S.P.Q. 124, 126, 1983 WL 178 (S.D.Fla.1983).

[2] In the present case, I am satisfied that the relevant community for determination of reasonable hourly rates for Fish & Neave is New York City. When the possibility of litigation arose, both Dr. Howes' patent counsel in Washington, D.C. and Arrow's patent counsel in Philadelphia suggested to their respective client the New York City law firm of Fish & Neave and, in particular, attorney Albert E. Fey.

Fish & Neave, located in New York City, has been in existence for over one hundred years. The firm currently consists of approximately 102 attorneys. Thirty-one of the attorneys are partners and approximately 71 attorneys are associates. Fish & Neave specializes in complex litigation, and in particular, litigation of patent, trademark, unfair competition, and related cases conducted in Federal Courts throughout the country. Many of the cases handled by Fish & Neave are comparable in size and complexity to cases handled by the litigation departments of much larger New York City law firms. *See* Affidavit of Albert E. Fey at ¶ 14.

**\*1196** I believe that a party should be entitled to retain the most competent counsel available, particularly in the highly specialized area of complex patent litigation and particularly when its local counsel suggests using an out-of-state law firm for the purpose of litigation. Therefore, because I conclude that plaintiffs had a good

| | |
|---|---:|
| Partners | 170–370 |
| Associates | 70–230 |
| Paralegals | 45–85 |

In order to assess the reasonableness of the Fish & Neave billing rates from 1984 until 1990, it is instructive to look at the billing rates of those attorneys most active in this case. Turning first to partners' rates, Mr. Fey's billing rate ranged from between $230 in 1984 to $370 in 1990. Mr. Morgan's billing rate ranged from between $190 in 1984 to $260 in 1987. Mr. Ousterhout became a partner in 1989. His billing rates ranged

reason for using non-local counsel, plaintiffs' New York City counsel are entitled to recover the reasonable hourly rate for the New York City community.

Defendants also contend that, even if this court determines that Fish & Neave is entitled to the rate of pay that was standard in New York City during the relevant time periods, the rates requested by Fish & Neave are still unreasonable.

In *Cunningham v. City of McKeesport,* 753 F.2d 262 (3d Cir.1985), *vacated on other grounds, 478 U.S. 1015, 106 S.Ct. 3324, 92 L.Ed.2d 731 (1986),* the court held that reasonable attorney fees are generally determined by the attorney's normal billing rate:

> In the seminal *Lindy I* opinion [ *Lindy Bros. Bldrs., Inc. of Phila. v. Am. R. & S. San. Corp.,* 487 F.2d 161 (3d Cir.1973) ], this court held that the value of an attorney's time is generally reflected in his normal billing rate. Our premise was then, and still is, that the reasonable value of an attorney's time is the price that time normally commands in the marketplace for legal services in which those services are offered.

*Id.* at 267.

[3] This case began in 1984. The range of hourly billing rates from 1984 until 1990 for Fish & Neave personnel who worked on this matter is as follows:

from $170 in 1987 as an associate to $250 in 1990 as a partner. Ms. Loring, an associate, was billed at a rate of between $80 in 1985 to $230 in 1990.

Fish & Neave's rates compare favorably with other New York City firms which handle complex litigation. For example, in 1989, Sherman and Sterling billed top associates at a rate of $250 per hour and top partners at $350 per hour; Willkie Farr & Gallagher billed senior

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

761 F.Supp. 1193, 17 U.S.P.Q.2d 1591
**(Cite as: 761 F.Supp. 1193)**

associates at $250 per hour and top partners at up to $400 per hour; Milbank, Tweed, Hadley & McCloy billed top partners at $375 per hour; Proskauer Rose Goetz & Mendelson billed top associates at $225 per hour and partners at up to $365 per hour; Hughs, Hubbard & Reed billed its top partner at $370 per hour. *See* Exhibit 54 to the Affidavit of Albert E. Fey.

A November 1989 article appearing in the *National Law Journal* lists associates' hourly rates at Proskauer Rose Goetz & Mendelson at up to $245 per hour and partners at up to $365 per hour; Brown & Wood bills associates at up to $215 per hour and partners at up to $400 per hour; Kenyon and Kenyon, a patent firm of 93 lawyers, bills associates at up to $195 per hour and partners at up to $330 per hour; Lord Day & Lord, Barret Smith bills associates at up to $210 per hour and partners at up to $400 per hour; Rosenman & Colin bills associates at up to $245 per hour and partners at up to $400 per hour; and Weil, Gotshal & Manges, which represents clients in patent infringement and other intellectual property litigation, bills associates at up to $235 per hour and partners at up to $375 per hour.

A 1987 American Intellectual Property Law Association ("AIPLA") survey, reporting on 1986 rates, broke the rates down into those of partners and associates in intellectual property firms. According to this survey, twenty-five percent of partners in private firms in New York City had hourly billing rates higher than $219 per hour, while twenty-five percent of associates in private firms in New York City had **1197** billing rates higher than $148 per hour. *See* Exhibit 54 to the Affidavit of Albert E. Fey.

The 1989 AIPLA survey revealed that, by 1988, twenty-five percent of partners in private firms specializing in intellectual property in New York City had billing rates higher than $247 and twenty-five percent of associates had hourly rates higher than $163. *See* Exhibit 54 to the Affidavit of Albert E. Fey.

Although the rates charged by Fish & Neave attorneys involved in this litigation between 1986 and 1988 were, for the most part, higher than the highest rates shown in the AIPLA' surveys, their rates are reasonable

when compared to other New York City firms that handle complex litigation. I am not aware of any legal authority that provides that, because this is a patent infringement action, I must limit my reasonableness analysis to a comparison of hourly rates at firms specializing in intellectual property law. Therefore, I am satisfied that the rates charged by Fish & Neave are reasonable hourly rates when compared with other New York City firms which handle complex litigation. The hourly rates are also reasonable in light of the skill, experience, and expertise of the Fish & Neave attorneys, particularly Mr. Fey who has over 30 years of experience.

**II. *Number of Hours Reasonably Expended***

Defendants also contend that the number of hours that plaintiffs' attorneys billed is unreasonable.

A. First defendants contend that the method by which Fish & Neave allocated charges between this action and another related action is arbitrary and cannot discharge plaintiffs' burden of proof. Therefore, defendants request that I award plaintiffs only those fees and disbursements which plaintiffs can actually prove that they incurred with respect to this action.

[4] As Mr. Fey explains in his affidavit in paragraph 8, Exhibits 1–6 to his affidavit comprise statements covering the earliest phase of two related matters—*Arrow v. Medical Components Inc.* (the AHS matter) and *Arrow v. Cook* (the Cook matter) filed in the Southern District of Indiana. Before the AHS and Cook matters were filed as individual lawsuits, and for a short time thereafter, Fish & Neave assigned all fees and disbursements pertaining to those matters to one billing category called the "Catheter Matter." Mr. Fey states that fees and itemized disbursements pertaining solely to the AHS matter have been allocated to this attorney fee petition and those pertaining solely to the Cook matter have been excluded from this petition. Mr. Fey explains that in those instances where attorney fees were related to both matters, 50 percent of those fees were allocated to this petition. With respect to disbursements attributable to the AHS matter, other than those specifically relating to AHS, Mr. Fey explains that Fish & Neave allocated the disbursements in Exhibits 1–6 in proportion to the percentage of total fees billed to

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

761 F.Supp. 1193, 17 U.S.P.Q.2d 1591
**(Cite as: 761 F.Supp. 1193)**

plaintiffs in Exhibits 1–6 for the AHS matter. According to Fish & Neave's calculations, the total fee attributable to the AHS matter in Exhibits 1–6 is $48,509.83, which represents about 65% of the total fees billed to plaintiffs in those exhibits for both the AHS and Cook matters.

I am impressed with the precision with which these computations were made. I conclude that the method of allocating attorney fees and disbursements not identified specifically to the AHS matter is reasonable, and not totally arbitrary as defendants suggest.

B. Second, defendants contend that this attorney fee petition is unreasonable because it includes the fees of plaintiffs' other patent counsel and because plaintiffs fail to provide any explanation for the necessity of the services provided by the law firms of Synnestvedt & Lechner, and Finnegan, Henderson, Farabow, Garrett & Dunner.

The four law firms involved in this action were: (1) Fish & Neave from New York; (2) Morgan, Lewis & Bockius from Philadelphia; (3) Synnestvedt & Lechner in Philadelphia; and (4) Finnegan, Henderson, Farabow, Garrett & Dunner in Washington,**1198 D.C. Partners from each of the above law firms submitted affidavits with attached exhibits in support of this attorney fee petition.

1. *Morgan, Lewis & Bockius:* Affidavit submitted by Richard F. McMenamin.
Fish & Neave retained the law firm of Morgan, Lewis & Bockius to act as its local counsel in this matter. As Mr. McMenamin explains in paragraph 4 of his affidavit, the responsibilities of Morgan, Lewis & Bockius have included: providing advice on local Court rules and practice; reviewing, filing, and serving of plaintiffs' submissions; reviewing of defendants' submissions; reviewing of Court correspondence, Orders, and Judgments; scheduling of Court appearances; attendance at preliminary pretrial and pretrial conferences; and preparation and review of correspondence.

The total amount of compensation sought by plaintiffs for the services of Morgan Lewis is

$26,068.07. This amount includes $24,425.50 for professional services and $1,642.57 for disbursements.

Defendants do *not* object to the fees requested for the services performed by Morgan, Lewis & Bockius from Philadelphia. Furthermore, I conclude that the fees charged by Morgan Lewis are reasonable in every respect, and I shall permit these fees to be recovered.

2. *Synnestvedt & Lechner:* Affidavit submitted by Charles H. Lindrooth.
[5] From reading Mr. Lindrooth's affidavit it appears that the law firm of Synnestvedt & Lechner is the law firm in Philadelphia that handles Arrow's legal work relating to patents. When litigation came into the picture, the law firm of Fish & Neave was retained. Because of Synnestvedt's knowledge of Arrow and its operations, it assisted Fish & Neave in its preparation for the trial of this action.

The total amount billed to Arrow for services rendered by Synnestvedt & Lechner in assisting Fish & Neave in its preparation for the trial of this action is $36,466. The total amount billed for disbursements incurred in the rendering of these services is $2,925.35.

It is *not* clear from the evidence submitted that the services of Synnestvedt & Lechner were necessary and not simply a duplication of the services rendered by Fish & Neave. Thus, I conclude that plaintiffs have *not* met their burden of proving that the services rendered by this Philadelphia firm were reasonably expended in this litigation, and I shall not permit recovery of these fees and disbursements totalling $39,391.35.

3. *Finnegan, Henderson, Farabow, Garrett & Dunner:* Affidavit submitted by Richard H. Smith.
[6] The law firm of Finnegan, Henderson, Farabow, Garrett & Dunner was retained by Dr. Howes in 1984 to represent him in patent matters and, in particular, the prosecution in the U.S. Patent and Trademark Office ("P.T.O.") of the application for reissue of his U.S. patent 4,071,146 (now reissue patent No. 31,873) and the prosecution of the reexamination proceedings conducted in the P.T.O. with respect to such patent as it related to this litigation.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

761 F.Supp. 1193, 17 U.S.P.Q.2d 1591
**(Cite as: 761 F.Supp. 1193)**

The total amount billed by the Finnegan firm for professional services is $34,239. According to Mr. Smith, $27,605.25 relates specifically to the reexamination proceedings. The total amount billed for disbursements is $3,227.08. According to Mr. Smith, $2,751.56 of the $3,227.08 spent on disbursements relates to the reexamination proceedings.

I conclude that the services rendered by the Finnegan, Henderson, Farabow, Garrett & Dunner firm were reasonably necessary to this litigation, especially considering how important the two reexamination proceedings were to this litigation. Further, I also conclude that fees charged for those services were reasonable.

[7] C. Third, defendants maintain that the attorney fees requested are unreasonable because they include unnecessary duplication of efforts arising out of the large number of attorneys at Fish & Neave who participated in this action. Defendants, however, concede that the duplication of efforts is not apparent from the data submitted by plaintiffs. According to defendants' **\*1199** calculations, three partners and twenty-three associates at Fish & Neave participated in this litigation over the years. Two partners, three associates, and four paralegals at Fish & Neave participated in the preparation of the fee petition. Defendants also assert that more attorneys than necessary attended the depositions, the hearings, and the trial. According to defendants' calculations, two or more plaintiffs' attorneys attended every deposition, and three attorneys attended every day of the trial.

Taking into account that this is a 1984 action (over 6 years old) and that it is a complex patent case, I cannot conclude that the number of people who have been involved in this case over the years is unreasonable. In my opinion, plaintiffs' attorneys presented a most impressive case to the jury. The issues in this complex patent case were difficult, and great skill and experience was required for plaintiffs' counsel to render proper legal services on behalf of plaintiffs. Clearly, Fish & Neave rendered highly competent services at all times. Also, the experience, reputation, special expertise, and ability of the attorneys from Fish & Neave is a factor which must be considered, as well as the superior res-

ults achieved by counsel for plaintiffs. I cannot conclude that three attorneys at trial, or two or three attorneys at depositions, is unreasonable or unnecessary duplication. The presence of more than one attorney at a deposition or trial enhances efficiency, as pointed out by plaintiffs' counsel at oral argument. Consequently, I decline to reduce the hours submitted by Fish & Neave and conclude that the number of hours expended on this litigation by Fish & Neave were necessary and, thus, reasonable.

III. *Fees Requested for Expert Witnesses and Consultants*

Defendants contend that plaintiffs should *not* be awarded fees for expert witnesses because they have not included any documentation in support of those fees, other than the bills submitted by Fish & Neave to their client, Arrow. In addition, defendants maintain that, even if plaintiffs had produced adequate documentation, this is not a proper case to award fees for expert witnesses and consultants.

In *Mathis v. Spears,* 857 F.2d 749 (Fed.Cir.1988), the Federal Circuit stated that "under section 285, which authorizes an award of fees only upon a finding of 'exceptional case,' a district court may, in the exercise of its discretion and inherent equity power, in a proper case, include an award of reasonable expert witness fees in excess of the $30 per day attendance fee specified in 28 U.S.C. § 1821." *Id.* at 759. However, what is not clear from *Mathis* is the definition of a "proper case." In *Mathis,* the Federal Circuit affirmed the district court's award of expert witness fees, and concluded that it was an exceptional case of vexatious and unwarranted litigation.

In *Beckman Instruments, Inc. v. LKB Produkter AB,* 892 F.2d 1547 (Fed.Cir.1989), Federal Circuit reaffirmed that, in light of the decision in *Mathis,* fees and expenses for experts and consultants are awardable under section 285. *Id.* at 1554.

Relying on *Mathis,* defendants contend that a "proper case" for the award of fees and expenses of experts and consultants is a case in which the losing party conducted the litigation in a vexatious or oppressive

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

761 F.Supp. 1193, 17 U.S.P.Q.2d 1591
**(Cite as: 761 F.Supp. 1193)**

manner. Defendants contend that their conduct in this action does not support the award of expert witness and consultant fees.

Upon review of the decision in *Mathis,* I conclude that defendants' interpretation of the holding in that case with respect to awarding fees for expert witnesses is unduly narrow, and I decline to adopt such a restrictive interpretation.

[8] In the present case, the jury made a specific finding of willful infringement, and I made a specific finding that this case is exceptional under section 285. Considering that this was a jury trial, the use of expert witnesses and a jury consultant was necessary to make the issues easier for the jury to understand. Therefore, I conclude that this is a proper case for the award of reasonable fees for expert witnesses and consultants. Further, I conclude that the **1200** expert witness fees and consultant fees are reasonable in light of the scope and complexity of this litigation.

At oral argument, I determined that defendants' objection with respect to the lack of documentation in support of the fees requested for expert witnesses and consultants had merit and ordered plaintiffs to submit additional documentation to support those fees. As per my order, plaintiffs submitted supplemental documentation. *See* Plaintiffs' Supplement to Plaintiffs' Petition for Attorney Fees. After carefully reviewing that documentation, I found it to be adequate to support plaintiffs' request for fees for their expert witnesses and jury consultant. *See* Order Dated November 5, 1990.

IV. *Overhead Charges*

[9] Fish & Neave's bills include charges for overhead, such as expenses for secretarial time, word processing equipment, and library services. Defendants contend that such bills for overhead charges should *not* be allowed because courts have consistently rejected requests for overhead charges in applications for attorney fees. *See PPG Industries, Inc. v. Celanese Polymer Specialties Co.,* 658 F.Supp. 555, 559 (W.D.Ky.1987); *Trend Products Co. v. Metro Industries Inc.,* 10 U.S.P.Q.2d 1539 (C.D.Cal.1989). Thus, defendants request this court to disallow the overhead charges re-

quested by Fish & Neave. The overhead amounts are summarized on pages 25–28 of Mr. Fey's affidavit.

In *PPG,* a case in which the court was considering another fee petition submitted by Fish & Neave the court stated as follows:

Celanese [the prevailing party] also seeks to recover $42,870.00 for the use of Fish & Neave secretarial services, word processing equipment, library and general office staff. These services are generally considered part of an attorney's overhead, and as such, have usually been deleted from awards made to attorneys under 35 U.S.C. § 285. This is a sound practice.

658 F.Supp. at 559 (citations omitted).

I agree with the position of defendants and reject plaintiffs' application for overhead charges which amount to a total of $54,437.61.

V. *Disbursements*

Defendants also contend that the disbursements sought by Fish & Neave should be reduced by the amount of $219,707 which Mr. Fey admits would be taxable as costs under 28 U.S.C. § 1920. *See* Affidavit of Albert E. Fey, at 2 n. 1.

[10] I agree with defendants that, if plaintiffs are going to recover the $219,707 as costs under 28 U.S.C. § 1920, plaintiffs should *not* also recover that amount in their attorney fee petition. However, at this time, it is not clear whether plaintiffs will file a Bill of Costs under section 1920. Therefore, I will not deduct this amount from the total amount requested for disbursements. If, however, plaintiffs file a Bill of Costs at a later time and recover cost thereunder, defendants will be entitled to an appropriate set-off.

VI. *Fees Requested for Preparation of the Fee Petition*

[11] In the present case, plaintiffs request $45,536.00 for preparing the fee petition which represents 269 hours of work.

Defendants summarily contend that plaintiffs' requested fees for preparation of their fee petition is unreasonable on its face and request this court to reduce

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

761 F.Supp. 1193, 17 U.S.P.Q.2d 1591
**(Cite as: 761 F.Supp. 1193)**

the amount by 70%—a 50% reduction for a rate adjustment and a 20% reduction for duplications of efforts. However, defendants do not point to any record evidence to support their argument that the time spent in preparation of the fee petition was excessive. *See Chromalloy American Corp. v. Alloy Surfaces Co., 353 F.Supp. 429, 431 (D.Del.1973)* ("Only if the evidence reveals that the rate actually charged is abnormally high or abnormally low will the Court base an attorney fee award on an hourly rate at variance with the bill for legal services**\*1201** that was actually rendered to the client.")

I conclude that the time spent preparing the fee petition was reasonable and *not* excessive. First, the majority of the work on the fee petition was performed by associates and paralegals. The two partners who worked on the fee petition, Mr. Fey and Mr. Ousterhout, spent a total of 14 hours on the fee petition—which is approximately 5% percent of the total number of hours spent on the fee petition (269 hours). Second, this case is six years old, so there were many records to obtain and organize in preparation of the fee petition. Finally, the fee petition was very well prepared.

However, in light of my decision to not permit recovery of expenses that are normally considered to be overhead, I shall *not* award plaintiffs the fees which they requested for the time spent on the fee petition by secretaries, accounting personnel, and word processing personnel. Therefore, I shall award plaintiffs $43,235 for the preparation of their fee petition, which represents 204.5 hours of work performed by attorneys and paralegals.

VII. *Prejudgment Interest*

Plaintiffs request an award of prejudgment interest on their attorney fees. Defendants assert that an award of prejudgment interest in a patent case, in which the prevailing party's counsel has been paid by its client on an ongoing basis, is unreasonable. In support of its assertion, defendants cite *Scott Paper Company v. Moore Business Forms, Inc., 604 F.Supp. 835 (D.Del.1984).*

In *Scott Paper,* the court denied an award of prejudgment interest on the attorney fees granted and

provided the following rationale for its decision:

Finally, the court in its discretion, will deny an award of prejudgment interest in the amount of $139,486.00 on the attorney fee award granted. In the first place, the attorney fees and expenses would have been dispersed in any event during the prosecution of this case and would not have been recoverable until this Court determined that the case was "exceptional." This determination was not made until September 5, 1984. Thus, it could not be said that Scott was out-of-pocket until that date. Secondly, the court is of the opinion that by doubling the judgment under § 284 for willfulness has made Scott more than "whole" for all sums expended in this case and that should be sufficient.

*Id.* at 838–39.

[12] I agree with defendants' position. I conclude that, under all the circumstances, an award of prejudgment interest is *not* appropriate in this case. First, plaintiff's counsel has been paid on an ongoing basis throughout the pendency of this action, and, thus, has never been out-of-pocket. Second, attorney fees were not even recoverable until this court found that this case was exceptional. This determination was made on May 22, 1990. Therefore, it could not be said that Arrow was out-of-pocket until that date. Finally, the trebling of the judgment pursuant to 35 U.S.C. § 284 for willful infringement has made plaintiffs more than "whole" for all sums expended in this case.

VIII. *Apportionment of Attorney Fee Award Between Defendants*

Plaintiffs suggest that the attorney fee award be divided proportionally in relation to the damages assessed against each defendant, rather than dividing the attorney fee award equally between the two defendants. Plaintiff provides two reasons for this suggested approach: (1) this approach would provide a distribution of the attorney fees commensurate with the amount of injury caused by each defendant; (2) this approach helps to assure that plaintiffs will in fact recover the attorney fees awarded because MedComp could not satisfy a $1 million judgment on attorney fees.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

761 F.Supp. 1193, 17 U.S.P.Q.2d 1591
**(Cite as: 761 F.Supp. 1193)**

Page 25

On this issue, the two defendants disagree—obviously. Defendant AHS contends that the award for attorney fees should be equally divided between the two defendants because plaintiffs never allege that they would have actually incurred less than one-half of the amount requested in attorney fees if MedComp had been the **\*1202** only defendant. Furthermore, defendant AHS contends that plaintiffs do not provide any breakdown for the fees incurred and services attributable to MedComp and those attributable to AHS.

On the other hand, MedComp agrees with plaintiffs that the attorney fee award should be divided in proportion to the damages assessed against each defendant. MedComp points out that one-half of the attorney fees requested by plaintiffs far exceeds the total damages assessed against MedComp, and therefore would be disproportionate to MedComp's size and the amount of damages assessed against it. MedComp also points out that it is *not* likely that plaintiffs would have expended over $2 million in attorneys fees to prosecute a case against MedComp alone because MedComp's total sales of infringing catheters have been less than $1 million. MedComp further states that plaintiffs had an incentive to prosecute their case vigorously because AHS (now Baxter Travenol) is a much larger company which has a much larger sales volume.

[13] I agree with the position of plaintiffs and defendant MedComp that the attorney fee award should be divided in proportion to the damages assessed against each defendant. AHS and MedComp have not contributed equally to the injury sustained by plaintiffs as a result of defendants' willful infringement. AHS's sales of infringing triple lumen catheters totalled over $34.5 million, while MedComp's total sales were less that $1 million. In 1989, MedComp's sales of triple lumen catheters were less than $80,000 compared with AHS's sales of more than $6.5 million. The $16,676,325.70 in damages assessed against AHS is about 30 times greater than the $554,106.60 in damages assessed against MedComp. Furthermore, considering that MedComp's total sales of triple lumen catheters were less $1 million, it is only logical that plaintiffs would *not* have spent approx-

imately $2 million to prosecute a case against MedComp alone. Therefore, considerations of equity require that the attorney fee award be assessed against the two defendants in a manner commensurate with the damage that each defendant caused.

An appropriate order follows.

### ORDER

Upon consideration of plaintiffs' petition for attorney fees and supporting affidavits and exhibits, plaintiffs' supplement to plaintiffs' petition for attorney fees, defendants objections, the parties' oral arguments, and for the reasons stated in open court on Wednesday, October 31, 1990 and the reasons stated in the accompanying memorandum,

IT IS ORDERED THAT:

1. Plaintiffs are awarded all of the fees, costs, and expenses requested in their fee petition, except for (1) the overhead expenses totalling $54,437.61, and (2) the professional fees and disbursements for services rendered by the law firm of Synnestvedt & Lechner totalling $39,391.35.

2. The two disallowed items total $93,828.96.

3. The total award of plaintiffs' attorney fees, costs, and expenses, pursuant to 35 U.S.C. § 285, is $1,949,448.49. This equals the amount requested by plaintiffs minus the two disallowed items [$2,043,277.45—$93,828.96].

4. The total sum awarded shall be divided between defendants American Hospital Supply Co. ("AHS") and Medical Components, Inc. ("MedComp") in proportion to the damages assessed against each defendant.

5. The portion of the total award of plaintiffs' attorney fees, costs, and expenses awarded against defendant AHS is $1,885,506.58.

6. The portion of the total award of plaintiffs' attorney fees, costs, and expenses awarded against defendant MedComp is $63,941.91.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

761 F.Supp. 1193, 17 U.S.P.Q.2d 1591
**(Cite as: 761 F.Supp. 1193)**

7. Plaintiffs shall recover from defendants post-judgment interest on the respective awards of attorney fees, costs, and expenses, calculated from the date of entry of this Order at the rate of 7.51%.

**\*1203** 8. Paragraphs 9 and 10 of the Final Judgment and Injunction dated June 8, 1990 are hereby amended to include the foregoing awards of plaintiffs' attorney fees, costs, and expenses, and post-judgment interest.

ACCORDINGLY, plaintiffs' petition for attorney fees is GRANTED IN PART and DENIED IN PART.

E.D.Pa.,1990.
Howes v. Medical Components, Inc.
761 F.Supp. 1193, 17 U.S.P.Q.2d 1591

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.